# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ADRIAN FRANCIS WILLIAMS,**
**D.O.C. # 126077,**

      **Plaintiff,**

**vs.**                          **Case No. 4:20cv288-TKW-MAF**

**LESLIE BURCH,**
**SERGEANT CARTER,**
**SERGEANT MELVIN,**
**COLONEL SHULER,**
**ASSISTANT WARDEN HANCOCK,**
**and FOUR JOHN OR JANE DOES,**

      **Defendants.**
_____/

## <u>REPORT AND RECOMMENDATION</u>

The pro se Plaintiff initiated this action in June of 2020. ECF Nos. 1-3. Plaintiff was granted in forma pauperis status and ultimately filed a fifth amended complaint, ECF No. 60, before service was directed on March 31, 2021, ECF No. 61.

Three of the five Defendants filed a motion to dismiss, ECF No. 95, on July 26, 2021. Plaintiff was advised of his responsibility to file a response in opposition to that motion, ECF Nos. 96 and 101, and he

submitted a "motion of opposition," ECF No. 103, on September 2, 2021, which has been deemed to be Plaintiff's response.

It took longer to serve the remaining two named Defendants, Burch and Melvin, but those Defendants filed a notice advising that they join and adopt the arguments raised in the motion to dismiss, ECF No. 95, filed by Defendants Carter, Hancock, and Shuler.  ECF No. 131 at 1.  Plaintiff attempted to submit an additional opposition to that filing, *see* ECF Nos. 123, but Plaintiff was informed that the filing was unauthorized.  ECF No. 125 at 2.  Plaintiff's prior response was the only response permitted, it was timely filed, and the notice adopting the motion to dismiss did not raise any new arguments.  *Id.*  Thus, the documents to be considered are Plaintiff's fifth amended complaint, ECF No. 60, the motion to dismiss, ECF No. 95, and Plaintiff's opposition, ECF No. 103.  The motion is ready for a ruling.

**Plaintiff's Allegations**

In 2010, Plaintiff was housed at Jackson Correctional Institution. ECF No. 60 at 6.  After he was attacked by "latin king" gang members, Plaintiff "requested protection,"[1] but was denied.  Instead, Plaintiff alleged

---

[1] Presumably, Plaintiff requested that he be placed in the protective management unit, but that request was denied.  ECF No. 60 at 6.

Case No. 4:20cv288-TKW-MAF

that he was transferred away from Jackson C.I. to resolve his need for protection. *Id.* He indicates that he was transferred back to Jackson in 2013 and again was threatened by "latin king" members. *Id.* Plaintiff again requested protection and, once again, was transferred. *Id.*

In late December 2018, Plaintiff was returned to Jackson. *Id.* Upon arrival he explained to officers "about his prior problems there" with the "latin king" gang members. *Id.* at 6. No action was taken and his grievances were either denied or he did not receive responses. *Id.* at 7. Plaintiff states that he was assaulted on July 1, 2019, by a "latin king" gang member. *Id.* He alleged that rumors were spreading that officers at Jackson C.I. were trying to pay gang members and other inmates to kill him. *Id.* He further alleged that Defendants retaliated against him "due to this ongoing issue" and denied his requests for protection. *Id.* at 7, 13.

Plaintiff contends his requests for help were denied. *Id.* He sues the Defendants for deliberate indifference, cruel and unusual punishment, retaliation, discrimination, and the denial of equal protection and due process. *Id.* at 8-17. Plaintiff sues for compensatory and punitive damages. *Id.* at 15-16.

**Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint's well-pleaded factual allegations are accepted as true, but "conclusory allegations" unsupported by facts are "not entitled to an assumption of truth." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010). A complaint must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claims. Twombly, 550 U.S. at 556 (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965). A complaint does not need detailed factual allegations; however, pleadings which contain "no more than conclusions" are "not entitled to the assumption of truth." Ashcroft, 129 S. Ct. at 1950.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  129 S. Ct. at 1950.  A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  129 S. Ct. at 1949 (citing Twombly, 127 S. Ct. at 1965).

When reviewing a motion to dismiss, the Court must construe the complaint in the light most favorable to the Plaintiff and accept the factual allegations as true.  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002).  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quoted in Twombly, 127 S. Ct. at 1966).

**Motion to Dismiss**

**1.    Due Process Claim**

Defendants argue that Plaintiff has failed to state a claim for the violation of his due process rights.  ECF No. 95 at 8-9.  In particular, Plaintiff claimed that Defendants violated his Fourteenth Amendment right "to be free from torture," and his Fifth and Fourteenth Amendment right "not to be placed at stake of a liberty interest."  *Id.* at 17.

The first step in evaluating a § 1983 claim "is to identify the specific constitutional right allegedly infringed."  Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811–12, 127 L. Ed. 2d 114 (1994) (citations omitted).  Plaintiff asserted a Fourteenth Amendment due process claim, but the basis for his claim is the allegation that Defendants failed to protect him.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  Albright, 510 U.S. at 273, 114 S. Ct. at 813 (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)).  Defendants are correct that the Eighth Amendment is the more explicit basis for his claim.

Plaintiff is a state prisoner in the custody of the Florida Department of Corrections.  It is well established that the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993)).  Thus, a claim that prison officials failed to "take reasonable measures to guarantee the safety of the inmates" is properly based on the Eighth Amendment.  Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984) (quoted in Farmer, 511 U.S. at 832, 114 S. Ct. at 1976) (other citations omitted). Because Plaintiff has not otherwise alleged a basis for a due process[2]

---

[2] For example, a prisoner does not have a due process right to have a prison official "acknowledge or respond to his grievances."  Stallworth v. Wilkins, 802 F. App'x 435, 439 (11th Cir. 2020).  "[A] prison grievance procedure does not provide an inmate with a constitutionally protected interest."  Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (quoted in Stallworth, 802 F. App'x at 439).  In addition, it is also well settled that a prison official's violation of state law does "not give rise to a viable substantive due process claim."  Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir. 1995) (citing Collins v. City of Harker Heights, Texas, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

claim, Defendants' motion to dismiss Plaintiff's Fifth and Fourteenth Amendment due process claims should be granted.

## 2.    Respondeat Superior

Defendants contend that Plaintiff's claims that Defendants "either denied grievances or did not respond to grievances and/or inmate request forms for a prison transfer" is not a basis for supervisor liability.  ECF No. 95 at 11-13.  Defendants point to case law which has held that denying a grievance does not make a supervisor liable for the allegedly violative conduct brought to light by the grievance."  *Id.* at 13.  Defendants argue that "Plaintiff has failed to meet his burden in this case and his Complaint against Defendants should be dismissed."  *Id.* at 13.

The verbose and repetitious style of Plaintiff's complaint does not make it easy to determine the basis for each claim brought against each named Defendant.  However, respondeat superior is not the basis for Plaintiff's claims against all Defendants.

The doctrine of respondeat superior or vicarious liability does not provide a basis for recovery in a § l983 civil rights action.  Piazza v. Jefferson Cty., 923 F.3d 947, 957 (11th Cir. 2019) (stating "[s]upervisory officials cannot be held liable under § 1983 for unconstitutional acts by their

subordinates based on respondeat-superior or vicarious-liability principles" and citing Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  The respondeat superior doctrine does not allow a government official to be held liable for the actions or inactions of other persons, including servants, subagents, or subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) (explaining that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Thus, there must be "allegations of personal participation" or facts showing "a 'causal connection' between a supervisor's actions and the alleged constitutional violation."  Piazza, 923 F.3d at 957 (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).  A causal connection may be shown by pointing to "a supervisor's policy or custom" that "resulted in "deliberate indifference to constitutional rights."  923 F.3d at 957 (citing Cottone, 326 F.3d at 1360-61).  It may also be shown by "the absence of a policy [which] led to a violation of constitutional rights."  923 F.3d at 957 (citing Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).

Here, Plaintiff did not allege any facts concerning a policy or custom. Thus, for any Defendant to be liable, Plaintiff must have alleged facts showing that a Defendant's own actions or inactions is the basis for liability.

It appears that Plaintiff's claim against Defendant Shuler as "chief of security" is based on the doctrine of respondeat superior. *See* ECF No. 103 at 11. Plaintiff alleged that the officers "operating under him" violated Plaintiff's rights when a "latin king" gang member, inmate Reuben Smith, was moved into Plaintiff's cell at Jackson C.I. ECF No. 60 at 11. Plaintiff alleged that he wrote a grievance about the matter to Defendant Shuler, but never received a response. *Id.* Plaintiff contends that Defendant Shuler is liable "for failing to make sure that the officers under him weren't acting as criminals . . . ." *Id.* at 12. Such a claim is barred because it is based on respondeat superior.

Similarly, Plaintiff alleged that he sent a grievance to the warden and the Secretary, but never received a response. *Id.* at 11. Plaintiff further alleged that the warden failed "to make sure that his assistant warden Glenn Hancock . . . was abating known danger . . . ." *Id.* at 12. Plaintiff also claimed the warden was liable "for failing to make sure that officials acting under him weren't trying to kill the Plaintiff . . . ." *Id.*

Case No. 4:20cv288-TKW-MAF

Plaintiff alleged that he filed a grievance to the assistant warden, Defendant Hancock, about his placement on the Jackson C.I. compound "into known danger."  *Id.* at 13.  Plaintiff said that Defendant Hancock continually denied his grievances.  In this instance, because there are no allegations that Defendant Hancock was responsible for Plaintiff's housing assignment or transfer to Jackson C.I., the complaint necessary alleges that Defendant is liable on a theory of respondeat superior because the Defendant did not correct the actions of other officials.  Hoever v. Belleis, 703 F. App'x 908, 911-12 (11th Cir. 2017) (dismissing claim based on respondeat superior based on allegations that the "supervisors denied grievances against their subordinates," finding it "insufficient to establish that the supervisors instigated or encouraged unlawful conduct").  Thus, Plaintiff's claims against Defendant Shuler, Defendant Hancock, and the John Doe warden should be dismissed based on respondeat superior. Plaintiff alleged no facts showing their personal involvement.

### 3.    Deliberate Indifference Claim

Defendants contend that Plaintiff's complaint fails to state a claim for deliberate indifference or for failure to protect him.  ECF No. 95 at 13-19. Essentially, it is argued that Plaintiff alleged only a "generalized danger

from Latin King gang members based upon an alleged altercation in 2013

involving an inmate allegedly in the Latin Kings." *Id.* at 17, 18.  Defendants

contend that Plaintiff did not allege that his prior altercation in 2013

involved the inmate who attacked him in 2019, inmate Smith.  *Id.* at 17.

Defendants also argue that Plaintiff's assertion that he informed

Defendants Carter and Melvin about his 2013 issues with latin king gang

members is "not enough to impute or infer knowledge that Plaintiff was in

danger from his cellmate in 2019."  ECF No. 95 at 17.

"[W]hen the State by the affirmative exercise of its power so restrains

an individual's liberty that it renders him unable to care for himself, and at

the same time fails to provide for his basic human needs--e.g., food,

clothing, shelter, medical care, and reasonable safety--it transgresses the

substantive limits on state action set by the Eighth Amendment. . . ."

Helling v. McKinney, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 2480, 125 L. Ed.

2d 22 (1993) (quoting DeShaney v. Winnebago Cnty. Dept. of Soc.  Servs.,

489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249

(1989)).  The Eighth Amendment imposes a duty on prison officials "to

protect prisoners from violence at the hands of other prisoners."  Farmer v.

Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811

(1994) (quoted in Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616-17 (11th Cir. 2007)); *see also* Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected ... from physical assault by other inmates."). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)).

A prison official violates a prisoner's Eighth Amendment right to be protected against harm when two requirements are met. Farmer, 511 U.S. at 834, 114 S. Ct. at 1977. First, the prisoner must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and, second, he must show that prison officials were deliberately indifferent to that risk - that is, that the prison official had a "sufficiently culpable state of mind." *Id.* at 834, 114 S. Ct. at 1977; *see also* Rodriguez, 508 F.3d at 617.

Defendants point to a recent Eleventh Circuit case in support of their position that a generalized danger from gang members is insufficient for a deliberate indifference claim. ECF No. 95 at 18 (citing to Daniels v. Felton,

823 F. App'x 787 (11th Cir. 2020)).  However, that case stands on a

different footing than this case.  First, the Daniels case was at the summary

judgment stage of litigation; here, Defendants have filed a motion to

dismiss.  Daniels, 823 F. App'x at 788.  Second, there was evidence in

Daniels that two prison officials had opened a cell door and allowed

unauthorized inmates to enter the plaintiff's cell, but insufficient evidence to

show the officials were subjectively aware of a risk of harm to the plaintiff.

823 F. App'x at 790.  The plaintiff "testified that he believed that the attack

was related to his cellmate's gang affiliation, and he contended that the

defendants had been forewarned of the danger posed by gangs at the

prison, based on a gang fight that had taken place two months earlier."  *Id.*

Yet the plaintiff "did not identify any risk of harm known to the defendants

beyond the generalized danger of housing rival gang members in the same

prison."  *Id.*  Moreover, plaintiff did not know his attackers, "did not have

any prior problems with them," and provided no "evidence of any specific

prior conflict between his cellmate and the attackers, either."  *Id.*  Of

particular significance to this case, there was nothing to suggest that the

plaintiff had personally informed prison officials of a risk of danger or harm

to himself.  The Eleventh Circuit concluded that plaintiff's "reference to a

single prior altercation between gangs - a fight that did not involve him and may or may not have involved his cellmate or their attackers - [was] not enough." *Id.*

Unlike <u>Daniels v. Felton</u>, in this case the Plaintiff alleged that he personally told the "female housing Sgt. and other officers about his prior problems" at Jackson C.I. with the latin king gang members and the "threats upon his life." ECF No. 60 at 6. Plaintiff also said he "filed grievances" before the incident took place. *Id.* at 7. He said that he notified Defendant Burch in his grievance that his "life was in danger due to prior threats" placed on his life by gang members but he received no help, she did not order an investigation into the issue, and denied his request for protection.[3] *Id.* The allegations are a bit vague and inartfully pled, but the complaint does provide a plausible basis for a claim against Defendant

---

[3] "[A] prison official violates the Eighth Amendment if he responds to a known risk 'in an objectively unreasonable manner.'" <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1358 (11th Cir. 2003) (quoted in <u>Jackson v. Stevens</u>, 694 F. Supp. 2d 1334, 1338 (M.D. Ga. 2010)). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." <u>Rodriguez</u>, 508 F.3d at 620 (quoted in <u>Cox</u>, 15 F.4th at 1360). At this point in the litigation, the inference which must be given to Plaintiff's allegations is that this official could have reduced the harm to Plaintiff by investigating his claims and reviewing his inmate file, but willfully failed to act.

Burch.  Plaintiff has shown that he alerted that official to a serious risk of harm, and she was deliberately indifferent to that risk.

Similarly, Plaintiff said that he submitted grievances to assistant warden Hancock about the threats on his life from latin king gang members.  *Id.* at 13.  Defendant Hancock allegedly denied Plaintiff's grievances, and did not direct any type of protective management investigation.  *Id.*  At the motion to dismiss stage of litigation, Plaintiff's claim against Defendant Hancock is sufficient to proceed.

Plaintiff has also alleged that he told the Jane Doe housing sergeant about the danger to his life from "latin king gang members making threats upon his life."  ECF No. 60 at 8.  He alleged that a latin king gang member was moved into his cell in "late April / early May of 2019" and Plaintiff again made a written request to the housing sergeant, "explaining the situation of danger again."  *Id.*  Again, Plaintiff's allegations are not artfully alleged, but Plaintiff is pro se.  He has sufficiently demonstrated that he informed the Jane Doe Defendant that his life was in danger from a specific gang prior to being attacked by member of that gang.  That allegation is sufficient to move forward at this point in the litigation.

In addition, Plaintiff alleged that Defendants Carter and Melvin moved a latin king gang member, Reuben Smith, into his cell.  ECF No. 60 at 9. Plaintiff said he "explained to them in person about his prior run ins with latin king gang members on [that] prison compound" and told them that the gang had placed "threats upon his life."  *Id.*  Plaintiff alleged that the Defendants told him to "get out of their faces" and put inmate Smith in his cell.  Afterwards, Plaintiff said that he wrote grievances to both officers about the issue.  *Id.* at 10.  The facts alleged are sufficient to show that Plaintiff brought a serious risk of harm to the attention of Defendants Carter and Melvin and they were deliberately indifferent to that risk.

However, Plaintiff has not sufficiently alleged a basis for a deliberate indifference claim against the Jon Doe official who approved his transfer back to Jackson Correctional Institution, ECF No. 60 at 9, or the classification specialist, *id*. at 10.  No facts are alleged to show that Plaintiff could not have been returned to a specific institution or that prison officials could not have kept him safe at Jackson Correctional Institution eight years after he was attacked.  Plaintiff points to no specific facts which reveal those officials were on notice that Plaintiff was in a serious risk of danger simply by his presence on the Jackson Correctional Institution compound.

Presumably, gang members are located at a multitude of Correctional Institutions, not just one institution in particular.

It has been stressed that a plaintiff "must show more than 'a generalized awareness of risk' and 'much more than mere awareness of [another inmate's] generally problematic nature.'"  Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1101-02 (11th Cir. 2014) (citing Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003)).  On the other hand, an inmate need not show he "was especially likely to be assaulted by the specific prisoner who eventually committed the assault" if prison officials were "aware of an obvious, substantial risk to" the inmate's safety.  Farmer, 511 U.S. at 843, 114 S. Ct. at 1982 (explaining that "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health, . . . and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk").

Here, Plaintiff has shown that several officials were made aware of a risk of harm to him from an identifiable and specific source, even if it were

not one particular prisoner.  Experience in this types of cases, and the experience of a reasonable correctional officer, suggests that if a prisoner is threatened by a specific gang, any member of that gang would be a threat of harm.  Ultimately, Plaintiff must come forward with evidence to support his allegations, but at this stage of the litigation, Plaintiff has sufficiently stated a claim against Defendants Burch, Carter, Melvin, Hancock, and the Jane Doe housing sergeant.

**4.    Eleventh Amendment Immunity**

Defendants raise their Eleventh Amendment immunity as a defense in this case.  ECF No. 95 at 19-20.  Review of Plaintiff's complaint reveals that he sues each Defendant in his or her official capacity only.  ECF No. 60 at 2-4.  Plaintiff seeks compensatory and punitive damages, as well as requesting injunctive relief.   *Id.* at 15-16.

To the degree Plaintiff seeks monetary damages from the Defendants in their official capacities, those claims must be dismissed. Absent limited exceptions, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment.  Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also* Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107 (reiterating that "absent

waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court."").

That "bar remains in effect when State officials are sued for damages in

their official capacity." Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107; *see*

*also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d

1268, 1289 (11th Cir. 2013) (same).

The first two exceptions to Eleventh Amendment immunity are

through waivers of sovereign immunity.  *See* Atascadero State Hosp. v.

Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985);

Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th

Cir. 1986).  Waiver may be either by the State or Congress may override a

state's immunity pursuant to its power under § 5 of the Fourteenth

Amendment.  Florida Prepaid Postsecondary Educ. Expense Bd. v.

College Sav. Bank, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d

575 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S. Ct.

1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief

sought is irrelevant to whether Congress has power to abrogate States'

immunity.").  "But absent waiver or valid abrogation, federal courts may not

entertain a private person's suit against a State."  Virginia Office for Prot. &

Advocacy v. Stewart, 563 U.S. 247, 254, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011).  Congress did not abrogate a state's immunity when enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor has Florida waived its immunity and consented to suit in federal court under § 1983.  Gamble, 779 F.2d at 1520.

A third exception is through Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908).  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court). Sandoval v. Hagan, 197 F.3d 484, 492 (11th Cir. 1999) (citing Summit Med. Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir. 1999).  The Ex parte Young exception holds that a state official who enforces state law which conflicts with the superior authority of the federal Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."  Stewart, 563 U.S. at 254, 131 S. Ct. at 1638.  Accordingly, determining whether this exception applies requires answering a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and

seeks relief properly characterized as prospective."  563 U.S. at 255, 131

S. Ct. at 1639 (citations omitted).

Here, Plaintiff has included a vague request for injunctive relief,[4]

presumably it is prospective in nature, but that is far from clear.  Plaintiff

seeks to be free from torture and not have his rights violated again.  ECF

No. 60 at 16.  More specifically, Plaintiff requests that the "Florida

Department of Corrections stop placing injury upon his life by continually

placing him in a position to be harmed by latin king gang members . . . ."

*Id.*  Construed liberally, this is a request for injunctive relief from an ongoing

danger as Plaintiff claimed he is not a gang member and "gang members

run in packs as a family."  *Id.*  Because Plaintiff indicates there is an

ongoing issue to his safety, the Eleventh Amendment does not bar

Plaintiff's request for injunctive relief.  However, because Plaintiff sues all

Defendants in their official capacities, his requests for monetary damages

must be dismissed.

---

[4] Plaintiff is no longer housed at Jackson Correctional Institution.  ECF No. 60.

**5.    Retaliation**

Defendants allege that Plaintiff's claim for retaliation is conclusory only.  ECF No. 95 at 21.  Defendants are correct.  Plaintiff's assertions about retaliation are conclusory only and unsupported by facts.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964 968 (11th Cir. 1986); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986).  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Farrow, 320 F.3d at 1248).

While Plaintiff has sufficiently alleged that he filed numerous grievances, Plaintiff has not alleged that he suffered any harm for doing so. To establish a First Amendment retaliation claim, a prisoner must show that he was being retaliated against for exercising his right to free speech. Farrow, 320 F.3d at 1248.  Thus, a viable complaint must allege that: "(1)

his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." Mosley, 532 F.3d at 1276.  Here, there are no allegations presented which provide a causal connection between Plaintiff's submission of grievances and the attack against him by the latin king gang member.  Moreover, there are no allegations which reveal that Plaintiff suffered an adverse action because he wrote grievances.  His retaliation claims are conclusory only and, thus, must be dismissed.

## 6.   Exhaustion

Defendants contend that Plaintiff failed to properly exhaust administrative remedies as required.  ECF No. 95 at 23.  As that argument pertains to Plaintiff's retaliation and due process claims, *id.* at 26, it need not be addressed because it has already been recommended that those claims be dismissed.

Defendants also assert that Plaintiff's Eighth Amendment claims are unexhausted.  *Id.* at 26-28.  Defendants contend that the only claim Plaintiff

properly exhausted was in informal grievance 104-1907-0076, "where Plaintiff only grieved that he was housed with a gang member." *Id.* at 28 (citing Exhibit A at 3).

Defendants submitted a copy of that grievance which, notably, was approved. ECF No. 95-1 at 3. Plaintiff was then advised that he was being reviewed for placement in protective management status. *Id.*

Plaintiff stated in that grievance that he was placed in a cell with a latin king gang member by Defendants Carter and Melvin and his classification officer. *Id.* Plaintiff said that they knew he "wasn't supposed to be" housed with him and those officials knew that. *Id.* Plaintiff then requested that he be transferred away from Jackson Correctional Institution and away from known danger. *Id.*

Congress has mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or Bivens. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); Bryant v.

Rich, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733

(2008).  There is no discretion to waive this requirement or provide

continuances of prisoner litigation in the event that a claim has not been

exhausted prior to filing.  Alexander, 159 F.3d at 1325; *see also* Porter v.

Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that

"the PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong"); Brown v.

Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000).  Even where an inmate

seeks only monetary damages in a civil rights case, he must complete the

prison administrative process if it could provide some sort of relief on the

complaint although no money could be given administratively.  Booth v.

Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).

"Requiring exhaustion allows prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being haled

into court."  Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166

L.Ed.2d 798 (2007).[5]

---

[5] The Court concluded that the statute does not impose "a 'name all defendants'
requirement." Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (stating "that
exhaustion is not *per se* inadequate simply because an individual later sued was not

A prisoner must comply with the process set forth and established by

the State's grievance procedures.  *See* Miller v. Tanner, 196 F.3d 1190,

1193 (11th Cir. 1999).  Thus, § 1997e(a) of the PLRA requires "proper

exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387

(2006) (concluding that "proper exhaustion" means complying with the

specific prison grievance requirements, not judicially imposed

requirements).  "Compliance with prison grievance procedures, therefore,

is all that is required by the PLRA to 'properly exhaust.'"  Jones v. Bock,

549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quoted in

Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1217-18 (11th Cir.

2010)).

Defendants "bear the burden of proving that the plaintiff has failed to

exhaust his available administrative remedies."  Turner v. Burnside, 541

F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones v. Bock, *supra,* and

noting that because failure to exhaust is an affirmative defense under the

PLRA, "inmates are not required to specially plead or demonstrate

exhaustion in their complaints").  Factual disputes concerning exhaustion

---

named in the grievances.").

may be decided by the court sitting as fact-finder, "so long as the factual

disputes do not decide the merits and the parties have sufficient

opportunity to develop a record." Bryant, 530 F.3d at 1373-74, 1376.  Even

though evidence may be presented to support or refute a contention that a

prisoner has not exhausted the grievance process, exhaustion is a "matter

in abatement and not generally an adjudication on the merits," thus, it

should be raised and treated as a motion to dismiss, not a summary

judgment motion.  530 F.3d at 1374-75.  When motions to dismiss are

based on issues not enumerated under Rule 12(b), then Rule 43(c)

governs, "which permits courts to hear evidence outside of the record on

affidavits submitted by the parties."  *Id.* at 1377, n.16.  Further, a credibility

finding may be made after review of the relevant documentary evidence.[6]

*Id.*

---

[6] When issues of exhaustion arise, judges are permitted "to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.  Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress' intent in enacting the PLRA's exhaustion requirement: that is, to "reduce the quantity and improve the quality of prisoner suits." 530 F.3d at 1376-77.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing Bryant, 530 F.3d at 1373-74, 1376).

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, FLA. ADMIN. CODE R. 33-103. The Department's process outlines a three step grievance process - to file an informal grievance, a formal grievance with the warden's office, and if still not satisfied, to file an appeal to the Office of the Secretary. A response to an inmate's informal grievance must be provided within 15 calendar days, formal grievance responses must be provided within 20 calendar days from the date of receipt of the grievance, and grievance

appeal responses must be provided within 30 calendar days.  FLA. ADMIN.

CODE R. 33-103.011(3).  The "expiration of a time limit at any step in the

process shall entitle the complainant to proceed to the next step of the

grievance process."  FLA. ADMIN. CODE R. 33-103.011(4).  However, if that

occurs, the inmate "must clearly indicate this fact when filing at the next

step."  *Id.*

Here, when Plaintiff responded to the motion to dismiss, he submitted

copies of numerous grievances which allegedly went unanswered.  ECF

No. 103 at 32-40.  Indeed, Plaintiff alleged in his complaint that he did not

get responses to his grievances.  ECF No. 60.

One of the grievances submitted is Plaintiff's copy of a grievance

appeal to the Secretary dated June 20, 2019.  *Id.* at 33.  There, Plaintiff

raised the claims which he asserts in this case - that his life was in danger

and he should not be housed with a latin king gang member.[7]  *Id.*  He also

said that he submitted a grievance to Colonel Shuler but he never

responded.[8]  *Id.*  Plaintiff has shown that he complied with the grievance

---

[7] This grievance was filed prior to the attack against Plaintiff in July 2019.

[8] Furthermore, when Plaintiff submitted the formal grievance to the warden, he
stated that he did not get a response from the Colonel to his informal grievance.  ECF
No. 103 at 34.

process prior to initiating this case on June 1, 2020, and exhausted his

Eighth Amendment claim.  ECF Nos. 1-3.  Because he did not get a

response to his grievances, he was entitled to proceed to the next step of

the grievance process.  After not receiving a response from the Secretary's

Office, Plaintiff was entitled to proceed to the judicial forum.  Plaintiff's

version of these facts must be accepted as true when ruling on the motion

to dismiss.  Turner, 541 F.3d at 1082.  The motion to dismiss should be

denied on the basis of exhaustion.

## **RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the

Defendants' motion to dismiss, ECF No. 95, be **GRANTED in part and**

**DENIED in part**.  The Eighth Amendment claims raised against

Defendants Burch, Carter, Melvin, Hancock, and the Jane Doe housing

sergeant should proceed, but all other claims raised should be

**DISMISSED**.  Additionally, Plaintiff's claims for monetary damages should

be **DISMISSED**, and this case proceed as to Plaintiff's request for

prospective injunctive relief only.  It is further **RECOMMENDED** that this

case be **REMANDED** for further proceedings.

   **IN CHAMBERS** at Tallahassee, Florida, on February 28, 2022.


   S/     Martin A. Fitzpatrick
   **MARTIN A. FITZPATRICK**
   **UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

   **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**