**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ADRIAN FRANCIS WILLIAMS,
D.O.C. # 126077,**

   **Plaintiff,**

**vs.**          **Case No. 4:20cv288-TKW-MAF**

**LESLIE BURCH,
SERGEANT CARTER,
SERGEANT MELVIN,
ASSISTANT WARDEN HANCOCK,
and JANE DOE HOUSING SERGEANT,**

   **Defendants.**
_____/

## **SECOND REPORT AND RECOMMENDATION**[1]

  Plaintiff's fifth amended complaint, ECF No. 60, is the operative

pleading in this case.  Plaintiff sues the Defendants in their official capacity

only.  His claim is, thus, limited to injunctive relief.  As to this point, an

additional word is warranted.  Plaintiff's fifth amended complaint stated,

without ambiguity, that the Defendants were sued in their official capacity

---

[1] The first Report and Recommendation, ECF No. 133, was entered on February 28, 2022, and dealt with Defendants' motion to dismiss, ECF No. 95.  That motion was granted in part and denied in part.  ECF Nos. 133, 138.

only.  ECF No. 60 at 2-4.  The capacity of the Defendants was highlighted

in the Report and Recommendation, ECF No. 133 at 19-22, entered on

Defendants' motion to dismiss in February 2022.  It was pointed out again

in the Order, ECF No. 138, adopting the Report and Recommendation

which was entered on March 28, 2022.  Plaintiff has been complaining

about this issue ever since, asserting in a "motion of awareness" that the

Court should have ignored his designation of "official capacity" on the

complaint form.  *See* ECF No. 141.  This issue was addressed in April,

ECF No. 144, and again in September, ECF Nos. 182-183, and for a third

time in November, ECF Nos. 193-195.  It was addressed for a final time in

December 2022.  ECF No. 201.  That Order advised Plaintiff that he would

be held to the assertions made in his complaint which have been

consistent.  Plaintiff's initial complaint ECF No. 1 at 2-5, sued the

Defendants in their official capacities only.  So did Plaintiff's first amended

complaint, ECF No. 14 at 2-5, second amended complaint, ECF No. 26 at

2-4, third amended complaint, ECF No. 35 at 2-4, and fourth amended

complaint, ECF No. 51 at 2-4.  There was no reason to question the

capacity in which Defendants were sued because Plaintiff's complaints

have been consistent.

Case No. 4:20cv288-TKW-MAF

Secondly, Plaintiff asserted several different claims against the Defendants - deliberate indifference, cruel and unusual punishment, retaliation, discrimination, and the denial of equal protection and due process.  ECF No. 60 at 8-17.  After ruling on the motion to dismiss, only Plaintiff's Eighth Amendment claims for failing to protect him remains.  ECF No. 138.

Additionally, the parties were provided a period of discovery.  ECF No. 139.  Plaintiff was reminded that he "must use the tools of discovery to identify the Jane Doe Defendant."  ECF No. 144 at 4.  He was informed that after locating and identifying that Defendant, he must request that the Defendant be served with process and simultaneously submit a service copy of his fifth amended complaint.  *Id.*  Plaintiff has not properly done so.

Notably, he sought an extension of time to serve the Jane Doe Defendant, ECF No. 152, but that request was denied for three reasons.  ECF No. 155.  First, Plaintiff had not yet identified that Defendant; second, Plaintiff did not demonstrate due diligence;[2] third, Plaintiff did not support his vague assertion that he had been denied discovery.  *Id.*  In addition,

---

[2] Plaintiff filed a multitude of documents in this Court; yet he did not demonstrate that he properly served discovery requests on opposing counsel.

Case No. 4:20cv288-TKW-MAF

Plaintiff submitted two motions seeking service on the Jane Doe Housing

Sergeant Defendant.  ECF Nos. 167-168.  However, the motions were

denied because Plaintiff did not provide a current address for the

Defendant and he did not provide the Defendant's name.[3]  ECF No. 170.

Instead, Plaintiff provided three possible surnames but was unsure if those

names were spelled correctly.  In light of the fact that this Defendant has

not been identified or served, it is recommended that the Jane Doe

Defendant should be dismissed from this action.

Thereafter, Plaintiff filed a motion for summary judgment on August

15, 2022.  ECF No. 176.  Defendants' motion for summary judgment, ECF

No. 186, was filed on September 28, 2022.  Defendants simultaneously

filed their response, ECF No. 187, to Plaintiff's motion, and Plaintiff filed his

response to Defendants' motion, ECF No. 190.  *See* ECF No. 192.  The

motions are ready for ruling.

---

[3] Plaintiff was informed that after identifying the Jane Doe Defendant, he "must file a motion with the Court which provides a name [and], location where the Defendant may be served."  ECF No. 139 at 2. Plaintiff was informed of that requirement at least three times.  ECF No. 170 (citing to ECF No. 139 at 2, ECF No. 144 at 4, and ECF No. 148 at 3).

Case No. 4:20cv288-TKW-MAF

**Plaintiff's Allegations**

In general, Plaintiff alleged that he was previously housed at Jackson Correctional Institution and was attacked by "latin king" gang members. ECF No. 60.  Plaintiff "requested protection,"[4] but his request was denied. Instead, Plaintiff was transferred away from Jackson C.I. to resolve his need for protection.  *Id.*  When he was returned to Jackson in 2013, he was again threatened by "latin king" members.  *Id.*  Plaintiff requested protection and, once again, was transferred.  *Id.*  In December 2018, Plaintiff was returned to Jackson for a third time.  *Id.*  This time he was not transferred away from the Institution and Plaintiff was assaulted on July 1, 2019, by a "latin king" gang member, Reuben Smith.  He alleged that rumors were spreading that officers at Jackson C.I. were trying to pay gang members and other inmates to kill him.  He claimed Defendants retaliated against him and denied his requests for protection.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[4] Presumably, Plaintiff requested that he be placed in the protective management unit, but that request was denied.  ECF No. 60 at 6.

Case No. 4:20cv288-TKW-MAF

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The

"party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex

Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must

then show[5] the court "that there is an absence of evidence to support the

nonmoving party's case."  *Id.* at 325, 106 S. Ct. at 2554.

---

[5] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial."  Sconiers v. Lockhart, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)).  Specific facts pled in a sworn complaint and supported by record evidence must be credited to the Plaintiff, and all reasonable inferences must be resolved in the light most favorable to the nonmoving party. Sconiers, 946 F.3d at 1262-63.  However, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think

is more credible."  946 F.3d at 1263.  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, 541 F. Supp.

2d at 1297-98)).  Thus, each motion for summary judgment has been separately evaluated.

**Relevant Rule 56 Evidence**

**1.     Defendants' Evidence**

Defendant Glenn Hancock was Assistant Warden of Programs at Jackson Correctional Institution in July 2019.  He states in his Declaration that he responded to formal grievances in which Plaintiff expressed a "general fear of the Latin King gang."  Hancock affidavit, ECF No. 186-1 at 2.  Plaintiff mentioned in some of those grievances that Reuben Smith was his cellmate.  *Id.*  Defendant Hancock responded to Plaintiff's grievances and advised him they were being returned without action.  The grievances were not "denied."  Plaintiff was informed of the "proper procedures he needed to follow to request protection" pursuant to the Department's administrative rules.  *Id.*

Defendant Hancock advises that if Plaintiff "would have provided a signed inmate request or witness statement to the Senior Correctional Officer, an investigation into his allegations would have been conducted."  ECF No. 186-1 at 2.  Further, if Plaintiff "had completed a request for protection, he would have been placed into Administrative Confinement,

pending an investigation into his claims." *Id.* Hancock states that he was authorized to make a housing assignment change, but such "assignments are completed by the Security Department in accordance with the IBAS system, to ensure compatibility." *Id.* Further, he could initiate a "Protection Review process," but he said that Plaintiff did not provide "enough information in his grievance" for the Defendant to initiate the process. *Id.* at 2-3. Defendant Hancock states that he "did not refuse to" provide protection to Plaintiff, but informed Plaintiff of the "steps he needed to take in order to to [sic] begin an investigation into his claim that he needed protection." ECF No. 186-1 at 3. Hancock also said that he was "unaware of any current or ongoing need of protection from any inmate at Jackson [Correctional Institution] which [Plaintiff] may now have." *Id.*

Defendant Lezlie Burch also submitted a Declaration. Ex. B (ECF No. 186-2). Defendant Burch is a Classification Officer at Jackson C.I. *Id.* Defendant Burch acknowledges receipt of an "inmate request" from Plaintiff dated February 14, 2019, concerning an "alleged danger and threats from gang members." *Id.* at 1-2. Burch responded to Plaintiff's request by advising Plaintiff that he was not listed as a "special review" such that another inmates could not be housed in proximity to him. *Id.* at 2. Burch

informed Plaintiff that it was "unlikely" that inmates who threatened Plaintiff in 2013 were still housed at Jackson C.I. in 2019. *Id.* Plaintiff was directed to "utilize the protection process if needed." *Id.* Defendant Burch advises that if Plaintiff needed to "be considered for protective management, he needed to initiate that process himself" as Burch had "no authority" to do so. *Id.* Burch had no other involvement with Plaintiff beyond that one response to his inmate request. *Id.*

Defendant Trenton Carter's Declaration explains that he was employed as a "Security Threat Group Sergeant" at Jackson C.I. in July of 2019. Ex. C (ECF No. 186-3). Defendant Carter states that he "does not recall receiving any grievance" from Plaintiff about needing protection from a Latin King gang member or, specifically, Reuben Smith. *Id.* at 2. Carter said he does not know the Plaintiff and was unaware "of any need for protection which he may have had." *Id.* Further, Carter states that he "had no authority to move inmate Reuben Smith into [Plaintiff's] cell, and did not do so." *Id.* As a Sergeant, he lacked authority to "make inmate cell assignments" or to put Plaintiff into protective management. *Id.* Carter adds that he has never verbally abused Plaintiff, disregarded any threat, or put an inmate in Plaintiff's cell despite protests of danger. *Id.*

Defendant Mason Melvin was employed as a Correctional Officer in July 2019 at Jackson C.I.  Ex. D (ECF No. 186-4).  Defendant Melvin's Declaration states that he does not recall receiving "any grievance" from Plaintiff concerning a need for protection.  *Id.* at 2.  As was the case with Defendant Carter, Defendant Melvin does not know Plaintiff and has "no knowledge of the incident" Plaintiff alleged in his complaint.  *Id.*  Carter was unaware that Plaintiff needed protection.  *Id.*  Further, he "had no authority to assign or reassign any inmate to any specific cell."  Thus, he could not move inmate Reuben Smith, or any other Latin King gang member into Plaintiff's cell.  *Id.*  As a correctional officer, Melvin lacked authority to "initiate placement of any inmate into 'protective management' status."  *Id.* Defendant Melvin did not verbally abuse Plaintiff, disregard any threat, or take any "action to cause him harm or deny any need for protection which he may have had."  *Id.*

On August 5, 2019, the Department of Corrections' Statewide Classification Office ["SCO"] transferred Plaintiff away from Jackson Correctional Institution because of the assault that occurred on July 1, 2019.  Ex. E (ECF No. 186-5).  The Report of Protective Management reveals that Plaintiff was placed in administrative confinement on July 1,

2019, after having an altercation with inmate Reuben Smith.  *Id.* at 1.

Plaintiff was interviewed and said the altercation happened because of

"disrespect and provocation from the gangs."  *Id.*  Plaintiff reported that the

fight between himself and inmates Rueben [sic] Smith and Troy Jackson

was "because he is not in a gang and they are."  *Id.*  Plaintiff was "cut in the

face multiple times by inmates Jackson and Smith."  *Id.*  Inmate Smith

denied cutting Plaintiff and said they only had a "fist fight."  *Id.*  Medical,

however, noted that Plaintiff had non-life threatening lacerations to his eye

and face.  *Id.*  Inmate Jackson refused to give a statement and indicated

only that the other two inmates were "roommates that got into an

argument."  *Id.*  It was recommended that Plaintiff should be transferred

and given "special review."  *Id.* at 2.

    At the time Defendants' summary judgment motion was filed in late

September 2022, inmate Reuben Smith was housed at Walton Correctional

Institution, away from Plaintiff.  Ex. F (ECF No. 186-6).  Additionally, inmate

Troy Jackson was housed at Everglades Correctional Institution.  Ex. G

(ECF No. 186-7).

## 2.    Plaintiff's Evidence

Plaintiff submitted copies of several informal grievances dated between June and August of 2022 with his summary judgment motion. ECF No. 176 at 25-43.  Those grievances do not concern the events at issue in this case or the allegations brought against the Defendants. Plaintiff's evidence is not relevant.

Nevertheless, Plaintiff's allegations from the complaint were sworn under penalty of perjury.[6]  ECF No. 60 at 23.  As is relevant to Plaintiff's claims against the Defendant, his allegations show that Plaintiff arrived at Jackson C.I. on December 28, 2018, and informed certain officers and the Jane Doe housing sergeant "about his prior problems" at Jackson with Latin King gang members placing "threats upon his life" and other related

---

[6] Plaintiff's complaint was signed under penalty of perjury and, thus, facts alleged therein constitute evidence which is properly considered in ruling on summary judgment.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019); Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014) (cited in Sanchez v. Sanchez, No. 5:10cv288-RH/EMT, 2015 WL 5016842, at *1 (N.D. Fla. Aug. 24, 2015).  Importantly, Plaintiff's factual assertions are noted, but unsupported legal conclusions have not been considered.  Further, Plaintiff's response to the Defendants' summary judgment motion is signed under penalty of perjury.  ECF No. 190.  However, Plaintiff primarily argues about discovery, his status in confinement, the Defendants' individual capacity, and he takes issue with arguments made by opposing counsel.  Id. at 1-9.  Thus, even though Plaintiff has sworn under "penalty of jury" that everything stated was "true," see id at 10, Plaintiff did not provide or attest to statements of fact.

issues.  ECF No. 60 at 6.  He said he had been cut by gang members and sprayed for filing grievances.  *Id.*

On July 1, 2019, inmate Reuben Smith (a Latin King gang member) cut Plaintiff in the face with a razor, requiring stitches.  *Id.* at 7.  He said that another inmate (T.J.) hit him with a lock.  *Id.*  Plaintiff said he "filed grievances before this incident took place but was continually denied help." *Id.*  He further said "some grievances were returned [but] others he never heard anything back about."  *Id.*

Plaintiff said "word was going around" the institution that "Department of Corrections' officials . . . were trying to pay gang members and other inmates to kill Plaintiff."  *Id.*

Plaintiff made vague assertions about submitting grievances to Defendant Burch, but he did not provide copies of those grievances.  ECF No. 60 at 7.  Plaintiff did, however, say that on February 11, 2019, he submitted a grievance to Defendant Burch which was "returned."  *Id.* Plaintiff then filed a second grievance on February 18, 2019, which he says was "denied" on February 27, 2019.  ECF No. 60 at 7.  Plaintiff contends he filed appeals after the grievance was denied, but "never heard anything back."  *Id.*  It was not until "late April/early May of 2019" that the Latin King

gang member was moved into Plaintiff's cell. *Id.* at 8. In May, Plaintiff

said he filed multiple grievances to the housing sergeant "but never got any

type response back." *Id.* Plaintiff also sent the warden a grievance and,

again, never received a response. *Id.* Plaintiff then sent a grievance to the

Secretary "but still heard nothing back." *Id.*

Plaintiff further said that he told Defendants Carter and Melvin "in late

April/early May of 2019" of his "prior run inns [sic] with Latin King gang

members" at Jackson C.I. and the gang placing "threats upon his life."

ECF No. 60 at 9. Plaintiff claimed that he "tried to explain this to them . . .

on the dates of May 7th, 8th, 9th, 15th, 21st and 30th and 31st." *Id.*

Plaintiff said they told him to "get out of their faces" and left the gang

member in his cell. *Id.* at 10. Plaintiff further said that he "sent grievances"

to Defendants Carter and Melvin on May 9, 15, and 22 of 2019, "but never

got any type response back." *Id.* Because of that, Plaintiff "placed a

grievance in the grievance box next to the chow hall . . . but heard nothing

back." *Id.*

As for Defendant Hancock, Plaintiff contends the Defendant

continually denied his "grievances about his life being in danger on" the

Jackson C.I. compound "in the years prior" to his arrival. ECF No. 60 at 13.

Plaintiff said his May 9, 2019, grievance was denied.  *Id.*  He appealed the grievance to the warden, "but it was never responded to," nor did Plaintiff receive a response from his grievance appeal to the Secretary's office.  *Id.*

Although Plaintiff did not provide any relevant grievances with his summary judgment filings, *see* ECF Nos. 176 and 190, the Court has taken notice of the following grievances which were submitted with Plaintiff's original complaint.[7]

On January 14, 2019, Plaintiff submitted a "request for administrative remedy or appeal" in which he said he did not feel that he should be at Jackson Correctional Institution.  ECF No. 1 at 161.  He said he "had two special reviews from [there] about gang members and inmates calling him the police and trying to harm" him.  *Id.*  That grievance has a stamp at the bottom of the form indicating Plaintiff submitted it on January 17, 2019.  *Id.* No response to the grievance has been provided to the Court.

Plaintiff also submitted a copy of the "Report of Protective Management."  *Id.* at 162.  The Report reveals Plaintiff was previously

---

[7] Plaintiff had complained previously that he had been transferred and "all of his legal work was taken from him . . ."  ECF No. 158.  In an effort to be thorough and fair to the pro se Plaintiff, the Court has located the grievances Plaintiff initially submitted.

attacked and threatened by Latin King gang members and was transferred away from Jackson C.I. to resolve his need for protection.  *Id.*

Another relevant grievance is Plaintiff's informal grievance to Defendant Burch dated February 14, 2019.  ECF No. 1 at 35.  Plaintiff complained that his life was in danger because he was transferred back to Jackson C.I.  *Id.*  He said that gang members had threatened him in 2013. *Id.*  Defendant Burch responded: "you are not special reviewed against anyone @ Jackson C.I."  *Id.*  "The chances of the inmates that threatened you in 2013 still being here are unlikely."  *Id.*  Plaintiff was directed to "utilize the protective process if needed."  *Id.*  Defendant Burch denied the grievance in late February 2019.  *Id.*

Plaintiff submitted a formal grievance to the warden's office on May 9, 2019.  ECF No. 1 at 159-160.  The response was provided by Defendant Hancock and advised that Plaintiff's grievance was "returned without disposition" because it was not in compliance with the Department's Rules. *Id.* at 160.  Further, Defendant Hancock advised Plaintiff that if he needed protection, he needed "to complete a DC6-236, Inmate Request, with justification for [his] need tor protection and give it to a Security Officer."  *Id.*

Plaintiff filed informal grievance 104-1907-0076 on July 2, 2019.  ECF No. 1 at 29; ECF No. 95-1 at 3.  Plaintiff complained that he was attacked by inmate Smith the day before.  *Id.*  The grievance asserts that Plaintiff was placed in a cell with Latin King gang member Smith by Defendants Carter and Melvin and Plaintiff's classification officer.  *Id.*  Plaintiff said they knew he "wasn't supposed to be" housed with Smith. *Id.*  The grievance was "approved" by Coachman (not a named Defendant) and Plaintiff was advised that he was "under review" for placement in protective management and he would be interviewed by someone from the Inspector General's Office.  *Id.*

The following month Plaintiff submitted another informal grievance concerning the attack on July 1, 2019.  ECF No. 1 at 30.  The grievance was also "approved" and Plaintiff was informed his issue had been "addressed through the protective management process."  *Id.*  The response advised that the ICT (Institutional Classification Team) had made a recommendation to the State Classification Office.  *Id.*  The responding official is not named as a Defendant.  *Id.*

Another attachment is a copy of a grievance appeal dated July 18, 2019.  ECF No. 1 at 164.  In addition to complaining about not having

access to his legal work while in confinement, Plaintiff complained he would never have been cut in the face unless he had been "illegally housed in the room with [a] Latin King gang member." *Id.* The grievance was "not accepted as a grievance of an emergency nature" by A. Johns. *Id.* at 165. Plaintiff was informed that he must first submit his "grievance at the appropriate level at the institution." *Id.*

**Analysis**

Plaintiff is a state prisoner in the custody of the Florida Department of Corrections. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993)).

"[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment." Helling, 509 U.S. at 31-32, 113 S. Ct. at 2480 (quoting DeShaney v. Winnebago

Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-1006, 103 L. Ed. 2d 249 (1989)).  The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833, 114 S. Ct. at 1976 (quoted in Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616-17 (11th Cir. 2007)); *see also* Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) ("[I]t is well settled that a prison inmate has a constitutional right to be protected ... from physical assault by other inmates.").  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981)).  Thus, a claim that prison officials failed to "take reasonable measures to guarantee the safety of the inmates" is properly based on the Eighth Amendment.  Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984) (quoted in Farmer, 511 U.S. at 832, 114 S. Ct. at 1976) (other citations omitted).

However, "[n]ot every injury suffered by one prisoner at the hands of another . . . gives rise to constitutional liability for prison officials." Washington v. Warden, 847 F. App'x 734, 737 (11th Cir.), *cert. denied sub*

*nom.* Washington v. Taylor, 211 L. Ed. 2d 113, 142 S. Ct. 250 (2021).  To

show that a prison official violated a prisoner's Eighth Amendment right to

be protected against harm, three requirements must be met.  Farmer, 511

U.S. at 834, 114 S. Ct. at 1977.  First, the prisoner must show that "he is

incarcerated under conditions posing a substantial risk of serious harm"

and, second, he must show that prison officials were deliberately indifferent

to that risk - that is, that the prison official had a "sufficiently culpable state

of mind."  *Id.* at 834, 114 S. Ct. at 1977; *see also* Rodriguez, 508 F.3d at

617.  The third showing pertains to causation.  Washington, 847 F. App'x at

737; Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019).  An inmate

must "demonstrate a causal connection between the prison official's

conduct and the Eighth Amendment violation."  Rodriguez, 508 F.3d at 617

(quoted in Milledge v. Fla. Dep't of Corr. Sec'y, 760 F. App'x 741, 743 (11th

Cir. 2019)).

Defendants argue that Plaintiff's claims cannot succeed because

Defendants Hancock and Burch were not deliberately indifferent to

Plaintiff's concerns for his safety.  ECF No. 186 at 14.  Both Defendants

acknowledge receipt of written grievances revealing Plaintiff was

concerned about his safety from Latin King gang members.  However,

there is no evidence that Plaintiff informed them of a particular threat at that time as opposed to 2013 when he was previously housed at Jackson C.I. Further, there is no evidence that Plaintiff identified any specific inmates who had threatened him or identified themselves as gang members who knew about Plaintiff's prior problems. Moreover, both Defendant Hancock and Defendant Burch informed Plaintiff of the steps he needed to take to request protection. Those actions suggest Defendants were not deliberately indifferent to Plaintiff's concerns.

Notably, Plaintiff's January 14, 2019, grievance was not directed to the attention of either Defendant. His February 14, 2019, grievance was submitted to Defendant Burch, but her response reveals she was not deliberately indifferent. Defendant Burch investigated Plaintiff's concerns and confirmed that he was "not special reviewed against anyone @ Jackson C.I." Thus, she did not ignore his complaint.

Further, Plaintiff's grievance reveals he was alerting her to events from 2013 when he was transferred away from Jackson. He did not include any facts which indicated a current problem or threat. *See* ECF No. 1 at 35. His complaint was solely about problems in the past and he complained that he should not have been transferred to Jackson. That one

grievance is insufficient to put Defendant Burch on notice that Plaintiff was then in danger.

Plaintiff generally stated that he filed multiple grievances to Defendant Burch. She disputes that, indicating there was only one grievance. Yet even if Plaintiff had filed more grievances, Plaintiff has not provided evidence of what he told the Defendant which could demonstrate that she had knowledge that Plaintiff was currently facing danger. Without the submission of the grievances, or more explicit testimony, Plaintiff has not shown that Defendant Burch was aware of his risk of harm.

Similarly, Plaintiff's May 2019 grievance which was received by Defendant Hancock, ECF No. 1 at 159, said only that Plaintiff previously had a "run in with Latin King gang" members and that he was in a cell with inmate Smith, who was a member of that gang. Plaintiff did not allege that inmate Smith had threatened him, warned him, or otherwise given him cause to fear. Plaintiff's grievance was "returned" without action because Plaintiff did not comply with the Rules of the grievance procedures. Yet even in returning the grievance, Defendant Hancock informed Plaintiff of the steps he needed to take to request protection, if he believed it was necessary. *Id.* at 160.

Case No. 4:20cv288-TKW-MAF

Again, Plaintiff generally asserted that he filed multiple grievances with Defendant Hancock, but he has not provided copies of those grievances nor has he testified as to what information was conveyed. Thus, Plaintiff has not demonstrated Defendant Hancock was aware that Plaintiff faced a substantial risk of serious harm. Furthermore, Plaintiff has not provided evidence which demonstrates that Defendant Hancock was deliberately indifferent to Plaintiff's safety. Because Plaintiff's evidence is insufficient to support his claims against Defendants Hancock and Burch, summary judgment should be granted in their favor. Milledge, 760 F. App'x at 743 (noting that prison officials avoid Eighth Amendment liability if they show they were "unaware of a danger").

There is a dispute in the evidence concerning Defendants Carter and Melvin. First, those Defendants deny receiving any grievances from Plaintiff about needing protection. Plaintiff said he "sent grievances" to Defendants Carter and Melvin on three occasions in May 2019, but never received responses. That assertion, by itself, is insufficient to show the Defendants had knowledge that Plaintiff was in danger because Plaintiff never submitted copies of those grievances and he did not state what information was conveyed to them. Just stating that a grievance was

submitted is insufficient to show the Defendant was given knowledge that Plaintiff faced a substantial risk of serious harm.

Second, Plaintiff has provided some evidence of making verbal complaints to Defendants Carter and Melvin.  Plaintiff further said he told them in late April or early May of 2019[8] about his prior problems with Latin King gang members and the gang placing "threats upon his life."  Without providing any information about a current threat, recent intimidation or communication from a gang member, the knowledge of an issue six years earlier is insufficient to alert a prison official to a prisoner's currently risk of danger.  Although Plaintiff said that he "tried to explain" his problem on additional occasions - on May 7th, 8th, 9th, 15th, 21st, 30th, and 31st - he has not provided any evidence as to the substance of what he told them. Thus, Plaintiff has not shown that these Defendants had knowledge of his risk of harm either.

Furthermore, the evidence is undisputed that Defendants Carter and Melvin had no authority to move Plaintiff or inmate Smith or otherwise "make inmate cell assignments."  If Plaintiff believed he was in danger from

---

[8] This date generally aligns with the date Plaintiff said that inmate Smith was placed in his cell.

Case No. 4:20cv288-TKW-MAF

his cell mate, that information should have been conveyed to prison officials who either make housing assignments or consider requests for protective management.  He did not do so.  A defendant who has no ability to correct a housing issue cannot be held liable for failing to do so.

In sum, Plaintiff's claim boils down to this - as demonstrated from his July 2nd grievance filed after he was attacked - it was unlawful to place him in a cell with a Latin King gang member and Defendants Carter and Melvin knew he "wasn't supposed to be" housed with Smith.   The problem with this claim is that Plaintiff has not shown he was placed on protective management or that prison officials otherwise entered an order to separate Plaintiff from certain inmates, whether in a gang or not.  In 2013, Plaintiff was transferred to resolve his need for protection.   *See* ECF No. 1 at 162. Thus, it was not wrong, unlawful, or unconstitutional to house Plaintiff with inmate Smith and Plaintiff has provided no evidence to show that any Defendant knew Plaintiff could not be housed with him.  It turns out to have been a problem, but Defendants were not given sufficient information to have knowledge of Plaintiff's risk of danger.  In light thereof, summary judgment should be granted in their favor.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Plaintiff's amended complaint, ECF No. 60, be **DISMISSED** as to the Jane Doe Defendant because Plaintiff never identified this prison official and service of process was never carried out.  Additionally, it is **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 186, be **GRANTED**, that Plaintiff's motion for summary judgment, ECF No. 176, be **DENIED**, and judgment be entered in favor of Defendants on Plaintiff's Eighth Amendment claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 28, 2023.


S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections must be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or**

**recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**